UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL H. SUTHERLIN,<br><br>                          Plaintiff,<br>v.<br><br>DAVID SAVARESE, JASON SINGLETON, DENNIS SINGLETON, FARWEST REALTY, INC., and DOES 1-10, inclusive,<br><br>                         Defendants. | Case No.: 3:17-cv-1200-CAB-(BGS)<br><br>**ORDER ON MOTION TO DISMISS COUNTERCLAIM**<br>**[Doc. No. 17.]** |

This matter is before the Court on the motion to dismiss filed by Cross-Defendant Jacob Carl Sutherlin. ("J. Sutherlin"). [Doc. No. 17.] The motion has been fully briefed and is suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is denied

**I. Background**

On June 13, 2017, Plaintiff Carl H. Sutherlin filed suit against David Savarese ("Savarese"), Dennis Singleton ("D. Singleton"), Jason Singleton ("J. Singleton") and Farwest Realty, Inc. ("Farwest") for battery, assault, invasion of privacy (intrusion upon seclusion), trespass, elder abuse, fraud, and violations of California Civil Codes §§ 1788.10, 1788.17, and 15 U.S.C. § 1692 *et seq.* [Doc. No. 1.] The complaint was amended

on December 27, 2017 and on February 13, 2018, the Court granted the motion to substitute J. Sutherlin in for his father, the deceased Plaintiff, Carl H. Sutherlin. [Doc. Nos. 9, 16.]

On January 24, 2018, Defendants filed their Answer to the FAC. [Doc. No. 14.] Along with his answer, Defendant Savarese asserted a Counterclaim for Judicial Foreclosure against J. Sutherlin. [Doc. No. 14, at 11-15.[1]]

On February 14, 2018, J. Sutherlin filed a motion to dismiss, asserting that this Court lacks subject matter jurisdiction to hear the claim. [Doc. No. 17.] On March 9, 2018, Savarese filed his response in opposition [Doc. No. 22] and J. Sutherlin filed a reply. [Doc. No. 23.]

*A. Allegations of the First Amended Complaint*

On December 27, 2017, C. Sutherlin filed an Amended Complaint ("FAC") that except for the California Civil Code violations asserted the same claims against Defendants. [Doc. No 9.] The FAC alleges that C. Sutherlin fell behind on the payments due on a second mortgage on his home located 4510 Pebble Beach Drive, Oceanside, California which resulted in a foreclosure sale of the property being scheduled for January 7, 2017. [*Id.* at ¶ 17.] Defendants D. Singleton, J. Singleton and Farwest, acting as agents for Sacarese "represented that they would loan money to Plaintiff to pay the second mortgage in full and that he could repaid [sic] the same in six months once his home was marketed for sale and sold." [*Id.* at ¶ 19.]

C. Sutherlin complains that on January 5, 2017, he signed a Residential Listing Agreement with J. Singleton, on behalf of Farwest, believing he would shortly be provided with a loan agreement setting a 3.0 percent interest rate and reflecting his understanding that the property would be put up for sale six months in the future. [*Id.* at ¶¶ 23, 27.] On January 6, 2017, feeling pressured to get his affairs in order, cognizant of the scheduled foreclosure of this home on the next day, and unaware that Savarese was loaning the

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry

money, Plaintiff hastily signed a loan agreement. [*Id.* at ¶¶ 21, 22, 28.] C. Sutherlin alleges that "D. Singleton forced him to sign a Straight Note and Deed of Trust" without being given the opportunity to read the documents or have them reviewed by his attorney. [Doc. *Id.* at ¶ 29.] The Deed of Trust was never notarized or recorded. [*Id.* at ¶ 30; *see also* Doc. No. 9-3.] The Straight Note informs that loan amount was for $36,000 with a total interest payment of $4,000.00, to be paid on or before July 6, 2017. [Doc. No. 9-2.]

A few days later, C. Sutherlin received a copy of the Note and Deed of Trust and realized that the interest rate did not reflect his understanding and had been set at 6 percent. [Doc. No. 9 at ¶ 36.] Further, C. Sutherlin discovered that the Residential Listing Agreement allowed Defendants to being marketing efforts to sell the house in four months, not the six months Plaintiff has agreed to. [*Id.* at ¶ 37.] Finding the documents not reflective of the agreed upon terms, C. Sutherlin refused to notarize the Deed of Trust. [*Id.* at ¶ 38.]

Additionally, it is alleged that Defendants proceeded to harass C. Sutherlin with phone calls, emails, texts, and visits to his home demanding he sign the Deed of Trust in the presence of a notary. [*Id.* at ¶¶ 40-43.] On April 29, 2017, Defendants J Singleton and D. Singleton tried to forcibly enter the Property, broke C. Sutherlin's foot by jamming it in the front door, broke the front door of the house, and hurled insults at him. [*Id.* at ¶¶ 44-54.] The Singleton's refused to leave the Property, and in fear of further injury, C. Sutherlin called the police. [*Id.* at ¶ 53.] In order to stop Defendants' constant abuse, C. Sutherlin sought bankruptcy protection [Doc. No. ¶ 61.]

Because of Defendants' harassing and abusive conduct, C. Sutherlin filed suit against them. The FAC alleges claims for battery, assault, invasion of privacy, trespass, fraud, intentional infliction of emotion distress, elder abuse pursuant to California Welfare & Institution Code § 15610, *et seq*, and violations of California Civil Codes §§ 1788.10, 1788.17, and Federal Truth in Lending Act ("TILA") Violations, 15 U.S.C. § 1692 *et seq.*

### B. Defendant Savarese's Counterclaim Allegations

On January 24, 2018, Defendants filed their Answer to the FAC. [Doc. No. 14.] Along with his answer, Defendant Savarese asserted a Counterclaim for Judicial Foreclosure against J. Sutherlin. [Doc. No. 14, at 11-15.[2]] While Savarese concedes that at the January 5, 2017 meeting between D. Singleton and C. Sutherlin, the Deed of Trust was not signed before a notary, he asserts that because of the limited time available to complete the transaction the parties agreed that any other necessary documents would be executed at a later date. [Doc. No. 14 at ¶ 11.] In addition, Savarese alleges that J. Sutherlin was present at the January 5, 2017 meeting when his father initially executed the documents and that "Jacob knew that Carl signed a deed of trust granting Savarese a security interest in the Property." [*Id*.] Savarese contends that on the basis of this understanding, D. Singleton delivered a $36,000 cashier's check to C. Sutherlin's lender which was then used to pay off the defaulted loan and save it from foreclosure. [*Id.* at ¶ 12.] However, absent the required notary acknowledgement the Deed of Trust could not be recorded. [*Id.* at ¶ 13.]

Savarese alleges that after providing C. Sutherlin with the money to pay off the defaulted loan, C. Sutherlin refused to re-execute the Deed of Trust in front of a notary and refused to authorize the listing of his Property for sale so that the loan between Savarese and C. Sutherlin could be repaid. [*Id.* at ¶ 13.] On July 6, 2017, the Note became due, but C. Sutherlin refused to make any payments. [*Id.* at ¶ 14.]

Additionally, Savarese asserts that the declaration C. Sutherlin included in his petition for bankruptcy made false representations. Specifically, Savarese points to C. Sutherlin's attestation that "he was the only person who had an interest in the Property, and that he had not gifted any property exceeding $600 in value, nor transferred any property to any person other than in the ordinary course of business, to anyone within 2 years before

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry

filing for bankruptcy" as being false. [*Id.* at 13, ¶ 15.] Savarese alleges that in reality, and unbeknownst to them, C. Sutherlin granted his son, J. Sutherlin, a fifty percent interest in the property, effectuated via a Grant Deed whereby J. Sutherlin became a joint tenant in the property with a right of survivorship. [*Id.* at 13, ¶ 16.] The Grant Deed was not immediately recorded. [*See* Doc. No. 14-3.]

Further, it is alleged that on October 3, 2017, the bankruptcy Trustee filed his Report of No Distribution, representing that he neither received any property nor paid any money on account of C. Sutherlin's estate. [Doc. No. 14 at 13, ¶ 17.] Therefore, Savarese contends that the Trustee did not administer the Property in the bankruptcy proceeding. [*Id.* at 13, ¶ 17.] On October 24, 2017, C. Sutherlin received an order of discharge from the bankruptcy court. On November 27, 2017, the Grant Deed was recorded. [*See* Doc. No. 14-3.] When C. Sutherlin passed away on November 28, 2017, J. Sutherlin became the sole record title owner. [*Id.* at 14, ¶ 14.]

On January 24, 2018, Savarese filed a Counterclaim for judicial foreclosure against J. Sutherlin claiming that he is the owner and holder of the Note and the beneficiary of the Deed of Trust. Under the terms of the Note and Deed of Trust should a default occur the Trustee has, after giving the appropriate notice of default and sale, the power to sell the Property for the benefit of Savarese. [Doc. No. 13 at 14-15; Doc. No. 9-1; Doc. No. 9-2] Notwithstanding the bankruptcy discharge, Savarese asserts that he entitled to foreclose on the Property because C. Sutherlin defaulted on the Note. [Doc. No. 14 at 14.-15.] Additionally, Savarese contends that he is entitled to attorneys' fees as provided for in the Note and Deed of Trust.

In his motion to dismiss, J. Sutherlin, argues that this Court lacks subject matter jurisdiction to hear the Counterclaim because (1) the counterclaim does not raise a federal question; (2) is not compulsory under Federal Rule of Civil Procedure 13(a) and (b); and (3) is not so related to the FAC that supplemental jurisdiction should be exercised. [Doc. No. 17.]

**II. Discussion**

In his motion, J. Sutherlin, argues for dismissal of the Counterclaim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction whereas Rule 12(b)(6) provides that a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. Because the question of constitutional standing is a "threshold matter central to [the Court's] subject matter jurisdiction" the Court will begin by considering the Rule 12(b)(1) arguments first. *Fulfillment Servs. Inc. v. United Parcel Servs., Inc.,* 528 F.3d 614, 618 (9th Cir. 2008).

*A. Compulsory Counterclaim*

J. Sutherlin asserts that "there is no factual connection whatsoever with Sutherlin's complaint for personal injuries and Savarese's counterclaim for foreclosure." [Doc. No. 17-1 at 5.] As a result of the lack of factual connect, he argues that the Court should not exercise supplemental jurisdiction over this claim. [*Id.* at 8-11.] In opposition Savarese contends that the Court has jurisdiction over the judicial foreclosure claim because it is a compulsory counterclaim. [Doc. No. 22 at 4-7.] Further, Savarese argues that if the Court finds the judicial foreclosure claim to not be compulsory, the Court should still exercise jurisdiction over the claim because there is a common nucleus of operative facts. [*Id.* at 7-10.]

Section 1367(a) of United States Code grants district courts supplemental jurisdiction over all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Rule 13 of the Federal Rules of Civil Procedure governs the pleading requirements of compulsory and permissive counterclaims. *See* Fed. R. Civ. P. 13(a). If a counterclaim is compulsory it is "inherently part of the 'same case or controversy' and will always invoke supplemental jurisdiction." *Grupo Salinas Inc. v. JR Salinas Wheels & Tires, Inc.,* 2017 WL 2972339, at * 2. (C.D. Cal. Jan. 39, 207)

(citing *Campos v. W. Dental Servs., Inc.*, 404 F. Supp. 2d 1164, 1167 (N.D. Cal. 2005); Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 2B–6.). Compulsory counterclaims known at the time of service must be stated in a pleading. Fed. R. Civ. P. 13(a)(1).

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(a)-(b)[3]; *Mattel, Inc. v. MGA Entm't, Inc.,* 705 F.3d. 1108, 1110 (9th Cir. 2013). To aid the courts in determining if a counterclaim arises out of the same transaction or occurrence and, is therefore compulsory, the Ninth Circuit, has developed "the logical relationship test." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005); *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987). Under the test, a court is required to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249. A logical relationship exists if the "same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. *In re Pegasus,* 393 F.3d at 1196 (citation omitted). Courts are required to read the "transaction or occurrence" component liberally. *Pochiro,* 827 F.2d at 1252.

The Court agrees with Savarese that there is sufficient overlap between the claims for the counterclaim to be considered compulsory. All of the claims being asserted stem from the conduct of the parties during and after the execution of the documentation securing the $36,000 to prevent the foreclosure on the Property. Logically, evidence concerning the loan and the parties' discussions, understanding and actions taken are relevant to both suits and provide context to the alleged fraud, TILA and foreclosure claims. While the TILA claim involves the enforcement of federal policies to protect

---

[3] In contrast, permissive counterclaims are claims "against an opposing party not arising out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b).

consumers, both the fraud and foreclosure claims involve the same underlying contract, therefore, severing the foreclosure claim would require litigating substantially similar operative facts in state court as will be litigated here. Additionally, if J. Sutherlin prevails on either the TILA or fraud claim and rescinds the contract underlying the loan then Savarese's right to foreclose on the house will undoubtedly be affected. Furthermore, J.Sutherlin is requesting that Defendants be restrained "any further contact with Plaintiff and collecting on the purported debt." [Doc. No. 9 at 26.] If the Court were to award such relief it would be implicitly ruling on the foreclosure issue. Thus, granting the motion to dismiss the Counterclaim would result in a waste of judicial resources and increase in litigation fees, and could potentially expose the parties to inconsistent judgments.

Moreover, J. Sutherlin's reliance on cases finding that collection of the underlying debt are not compulsory claims in litigation brought under the TILA is misplaced and overlooks the jurisdictional posture litigation. Here, the initial complaint invoked the Court's jurisdiction by raising a federal question - whether Defendants loan on the Property was subject to the right to cancel provisions of TILA. But, the TILA claim was the only federal claim asserted, the other seven causes of action were all state law claims, including Defendants allegedly fraudulent conduct related to the $36,000 loan. The actions complained of occurred over a period of months that began when C. Sutherlin signed the Residential Listing Agreement, Straight Note and Deed of Trust in January 2017. The same is true for the FAC. The tort claims are no more related to the TILA claim than the foreclosure claim, yet J. Sutherlin assumes the Court will exercise supplemental jurisdiction over them while vehemently opposing the filing of the Counterclaim. Allowing J. Sutherlin to pursue his multiple state law claims in federal court while denying Savarese the same opportunity is hardly fair or efficient. *See, generally, Mitchell v. CB Richard Ellis Long Term Disability Plan,* 611 F.3d 1192, 1201 (9th Cir. 2010) ("The purpose of Rule 13(a) is to prevent multiplicity of litigation and to promptly bring about resolution of disputes before the court.").

In sum, the Court finds Savarese's Counterclaim compulsory and therefore exercises ancillary jurisdiction over it while the federal claim remains at issue. *See Baker v. Gold Seal Liquors,* 417 U.S. 467, 469 n.1 (1974) (because compulsory counterclaim are barred if not brought, federal courts "have ancillary jurisdiction over [the compulsory counterclaim] even though ordinarily it would be a matter for state court.").

*B. Failure to State a Claim*

J. Sutherlin asserts that the Counterclaim makes only conclusory allegations and that there are "no statute cites that would even allow the Counter-complainant to judicially foreclose." [Doc. No. 17-1 at 12.] The Court does not agree.

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). But, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).

Savarese has alleged and described the loan transaction including the obligation and security, his status as a payee and claim of interest on the Property, C. Sutherlin's default on the obligation and the transfer of security to J. Sutherlin without Savarese's knowledge. This is sufficient to state a prima facie case for foreclosure. *See* Cal. Civ. Prac. Real Property Litigation § 4:116. Further, a number of the facts pled in the Counterclaim overlap with those pled in the FAC[4], providing J. Sutherlin with sufficient allegations and fair notice of the Counterclaim so that he is able to effectively defend against it. *See, e.g., Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or

---

[4] *Compare* Doc. No. 14 at 11-15, ¶¶ 7-15 *with* Doc. No. 9, ¶¶ 17-40.

counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Thus, Savarese has adequately pled his judicial foreclosure claim. Accordingly, the motion to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**.

## I. Conclusion

For the reasons set forth above, Counter-Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) is **DENIED**.[5] J. Sutherlin has up and including **April 30, 2018** to file his answer.

It is **SO ORDERED**.

Dated: April 9, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[5] Having found Savarese's counterclaim to be compulsory, the Court need not determine if it would have exercised supplemental jurisdiction over the claim had it been deemed a permissive counterclaim. *See Campos*, 404 F. Supp. 2d at 1168 (permissive counterclaims may qualify for supplemental jurisdiction under § 1967 if the counterclaim forms part of the same case or controversy).